IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JACK JOHN C. HAMANN,

                        Plaintiff,                        OPINION AND ORDER

    v.

                                                        22-cv-245-wmc

CONRAD MAGNO, DDS,

                        Defendant.

---

       Plaintiff Jack John Hamann is currently incarcerated at Wisconsin Secure Program Facility ("WSPF") and was previously granted leave to proceed *pro se* in this lawsuit against dentist Conrad Magno for allegedly botching a tooth extraction under the Eighth Amendment and state-law negligence. (Dkt. #9.) Both parties have now moved for summary judgment. (Dkt. #86 and Dkt. #94.) Hamann also appears to seek reconsideration of the court's order denying his motion for appointment of counsel and an expert. (Dkt. #106.) Because the evidence of record would not permit a reasonable trier-of-fact to find that Dr. Magno extracted Hamann's tooth with deliberate indifference, the court will grant Dr. Magno's motion on the merits of his Eighth Amendment claim, deny Hamann's motion for summary judgment, relinquish jurisdiction over his state-law negligence claim and deny his construed motion for reconsideration as moot.

UNDISPUTED FACTS[1]

### A. Parties

Hamann was an inmate in the custody of the Wisconsin Department of Corrections ("DOC") at WSPF during all times relevant to this lawsuit, and Dr. Magno was employed by the DOC at WSPF as a limited-term dental consultant between January 2020 and April 2021.

### B. Hamann's Dental Procedure

Dr. Magno saw Hamann in February 2021 to extract a tooth on the lower right side of his mouth because the tooth hurt, and he wanted it removed. Before Dr. Magno removed the tooth, he explained to Hamann both the procedure and the risks, complications and benefits of the procedure. Dr. Magno also asked Hamann about how long he was imprisoned before extracting the tooth. (Hamann Aff. (dkt. #89-3) 1.) In particular, imaging showed that the procedure was complicated, as Hamann had an ankylosed (root fused to jawbone) tooth and a blunderbuss (widened) root.[2] Nevertheless,

---

[1] Unless otherwise noted, the following facts are undisputed. The court has drawn these facts from the parties' proposed findings of fact and responses, as well as the underlying evidence submitted in support. Specifically, as Hamann signed his proposed findings of fact under penalty of law (dkt. #87-1 and dkt. #87-3), the court has accepted them to the extent reasonably within his personal knowledge. *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017) (accepting that a verified complaint "is also the equivalent of an affidavit for purposes of summary judgment"). In addition, Hamann purports to object to many of Dr. Magno's proposed findings of fact, but many of his responses cite to no evidence or are non-responsive and are overruled unless otherwise noted. *See Proc. to be Followed on Mot. For Summ. Judg.*, § II(C), (E); *Hedrich v. Bd. of Regents of Univ. of Wisconsin Sys.*, 274 F.3d 1174, 1178 (7th Cir. 2011) (courts are to consider only evidence set forth in proposed finding of fact with proper citation).

[2] Although the parties dispute whether Dr. Magno imaged Hamann's jaw before the initial extraction attempt, they agree that imaging was done before the second extraction attempt.

Dr. Magno was comfortable performing the extraction based on his oral surgery training, experience and skill.

While no general anesthesia was available for extractions performed at the prison, Magno determined no general anesthesia was required for tooth extractions. Before extracting the tooth, therefore, Dr. Magno administered local anesthetic to numb his mouth. Dr. Magno then made an incision into Hamann's gumline, where he confirmed the ankylosed tooth and blunderbuss root diagnoses. Because of these complicating factors, the tooth and root had to be cut into more pieces. As a result, Dr. Magno split the tooth into sections for a segmented extraction. Due to the difficulty of the extraction, Dr. Magno also attests that he administered additional, local anesthetic shots to ensure that Hamann would not experience any pain during the procedure. (Magno Decl. (dkt. #97) ¶ 23.) During the first part of the extraction, Dr. Magno made eight unsuccessful attempts to remove the tooth and made four cuts that required sutures. (Dkt. #87, at 3-4.)

At some point during these eight, initial attempts, Hamann raised his hand to stop the extraction because he felt pain from the cuts and tasted blood, but Dr. Magno ignored his gesture and continued to operate, including putting his fingers into Hamann's mouth and scratching his mouth. (Hamann Aff. (dkt. #89-9) 1.) During these initial attempts, Dr. Magno was also rough with his lips, and Hamann had to ask twice for lubricant on his lips, which Dr. Magno also ignored the first time he asked. (Dkt. #87, at 3.) Finally, blood spattered on Hamann's face, and he jumped and cried out in pain because Dr. Magno had cut in an unnumbed area of his mouth. (*Id.* at 3-4.)

3

After Hamann cried out in pain, Dr. Magno paused the extraction and asked Hamann if he could pulverize the tooth, which Hamann gave him permission to do. (*Id.* at 3.) Dr. Magno also asked Hamann for permission to remove scar tissue from the tip of his tongue, which he declined. (*Id.* at 4.) During a second pause in the extraction attempt, Hamann asked Dr. Magno to stop being reckless because Dr. Magno's fingernails were cutting into his mouth, and Dr. Magno told him that he would try to be more careful, but Dr. Magno cut him three more times after this second pause. (*Id.*) In total, Dr. Magno cut Hamann eight times, and Hamann reports feeling six of those cuts. (Hamann Aff. (dkt. #89-9) 1.)

Once the tooth and root were removed, however, Dr. Magno cleaned the surgical site, stopped any bleeding with applied pressure and "permanent" sutures, warned Hamann that there was a risk of nerve injury and explained the signs of nerve injury. (Dkt. #87, at 4); (Def.'s Ex. 1000 (dkt. #98-1) 4.) Because the extraction was complicated, it lasted longer than a typical extraction, about 60 minutes.[3] Dr. Magno further attests that Hamann bled and experienced an expected amount of pain during the procedure, noting that pain is associated with any type of extraction, and that he would have noted any complications in Hamann's medical record.[4] (Magno Decl. (dkt. #97) ¶¶ 21-22.)

---

[3] Hamann claims the length of the first extraction alone took 50 minutes, which is more than understandable given that he was the one experiencing ongoing pain, but this difference in timing is not material, since there is no dispute that Dr. Magno was attempting throughout to remove the tooth, however ineptly.

[4] Hamann asserts that he experienced an atypical amount of pain and bleeding for an extraction, but the typical amount of bleeding and pain for a complicated extraction is not within his personal knowledge.

Following the procedure, Dr. Magno prescribed Hamann antibiotics, Tylenol, and ibuprofen; he also ordered a liquid diet (Ensure twice a day for 30 days), saltwater rinses, and ice therapy.

Hamann's medical record shows that, shortly after the order for Ensure was entered, it was scheduled for "future discontinue" by Erin Wehrle. (Dkt. #91-29, at 1.) Dr. Magno did not treat or see Hamann again after the extraction because he did not provide regular dental care for inmates. Dr. Magno was responsible for putting in the orders, but he was not responsible for administering them, as he was not on-site at the institution. Also, there is no record evidence that Magno was ever told that Hamann had not received the ordered, post-operative care.

Eight days after the extraction, Hamann submitted a dental service request asking for a dentist other than Dr. Magno to remove his sutures and stating that he had not gotten Ensure. Afterward, Dr. Drew Delforge removed eight different silk sutures from Hamann's mouth, which he described as being in an "unorthodox," "figure eight" pattern. (Def.'s Ex. 1000 (dkt. #98-1) 4, 18); (Dkt. #87, at 5.) Still, Dr. Delforge's notes stated that Hamann's pain level was zero and noted that the tissue was only "slightly edematous."[5] (Def.'s Ex. 1000 (dkt. #98-1) 4.) Finally, Dr. Delforge noted that Hamann asked to cancel his liquid diet order and to return to a regular diet. (*Id.*)

At a follow-up appointment about two months after the tooth removal, Dr. Michael Lamarca further determined that: Hamann's gums were healthy; he had full sensation;

---

[5] "Edematous" means "swollen." *Edema*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/edema/symptoms-causes/syc-20366493.

5

there was no indication of infection; and the extraction site was healing normally. (*Id.* at 5.) While Hamann did report itchiness in his gums, Dr. Lamarca advised that the itchiness should go away with time. (*Id.*) At yet another October 2022 follow-up appointment with Dr. Keith Nance, Hamann reported itchiness and that he could still "feel the tooth." However, Hamann also reported to Dr. Nance that he was wearing his prosthetic tooth without discomfort and imaging merely showed a small radiolucency where part of the removed root would have been located, which Dr. Nance explained that he would monitor, but might just be a scar from his surgery. As promised, Hamann saw Dr. Nance again in January 2023, and the imaging indicated no change in the size of the radiolucency and no change in the adjacent tooth. Hamann reported mild itching and occasional pain in the extraction area, but Dr. Nance rendered no further treatment. Moreover, nothing in the medical records suggests that any provider ever diagnosed Hamann with nerve damage.

## OPINION

Summary judgment is appropriate if the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Plaintiff contends that defendant acted "recklessly" while performing the tooth extraction, in violation of the Eighth Amendment and state medical negligence law in the following ways: failing to obtain imaging on his mouth before attempting to extract the tooth; making eight separate cuts to his mouth, including accidental cuts that were not near the extracted tooth; and cancelling his Ensure and ice

order.[6] He further contends defendant was aware that he caused plaintiff pain, because (1) he admitted his need to be more careful and (2) defendant was unqualified to perform the procedure.

In response, defendant contends that no reasonable jury could find he acted with *deliberate indifference* to plaintiff's tooth extraction or pain, because he administered additional numbing shots to control the pain, educated plaintiff about signs of nerve damage, and ordered appropriate post-extraction care. While admitting that plaintiff complained of pain and bleeding during the procedure, he further asserts that those are common side effects of oral surgery and that plaintiff healed completely with no long-term complications. He also argues that he had no duty to follow up with plaintiff, as he did not provide ongoing dental care to inmates and the record shows that other dentists had and undertook that responsibility. Finally, defendant asserts that plaintiff suffered no harm from the procedure, as his extraction site healed well and he was never diagnosed with extraction-related injuries. The court agrees with defendant, at least with respect to plaintiff's failure to advance any material factual dispute and defendant's entitlement to judgment as a matter of law on the Eighth Amendment claim of deliberate indifference.

---

[6] Plaintiff appears to be attempting to raise new Federal Tort Claims Act ("FTCA") claims in his summary judgment response brief, but he is not allowed to advance claims for which he was not granted leave to proceed. *See* court's screening order (dkt. #9.) In any event, plaintiff cannot proceed with claims under the FTCA against the state defendant in this case. *See Buechel v. United States*, 746 F.3d 753, 758 (7th Cir. 2014) (explaining that the FTCA allows a person to bring an action in federal court *against the United States*).

### I. Eighth Amendment

Certainly, the Eighth Amendment gives prisoners the right to receive adequate medical care, *Estelle v. Gamble*, 429 U.S. 97 (1976), but to prevail on such a claim, plaintiff must prove "deliberate indifference to serious medical needs" or "the unnecessary and wanton infliction of pain." *Id.* at 103-04 (quotation marks and citation omitted). This principle applies equally to dental care. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010). Thus, to prevail on his claim of constitutionally inadequate dental care, plaintiff must advance sufficient evidence for a reasonable jury to find two elements: (1) an objectively serious medical condition; and (2) a state official who was deliberately (that is, subjectively) indifferent. *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019); *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). Defendant does not seek judgment on the ground that plaintiff's tooth pain did not constitute a serious medical condition, but rather for lack of evidence that he acted with deliberate indifference to plaintiff's tooth pain.

"Deliberate indifference" means that the official was aware that the prisoner faced a substantial risk of serious harm, but disregarded that risk by consciously failing to take reasonable measures to address it. *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997). Of particular relevance in this case, deliberate indifference constitutes *more than* negligent acts or even grossly negligent acts, although it requires something less than *purposeful* acts. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994); *see also McGowan v. Hulick*, 612 F. 3d 636, 641 (7th Cir. 2010) (affirming dismissal because plaintiff had not suggested that the defendant maliciously intended to cause him pain or "otherwise performed the [dental] procedure in a way that he knew would create a substantial risk of complications").

8

The threshold for deliberate indifference is met where: (1) "the official knows of and disregards an excessive risk to inmate health or safety"; *or* (2) "the official [is] both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," *and* he or she draws that inference yet deliberately fails to take reasonable steps to avoid it. *Farmer*, 511 U.S. at 837; *see also Burton v. Downey*, 805 F.3d 776, 785 (7th Cir. 2015) ("the infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in nature in the criminal sense" (quotation marks omitted)), although a jury may "infer deliberate indifference on the basis of a physician's treatment decision [when] th[at] decision [is] so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006).

Even so, "[w]hether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations." *Snipes v. DeTella*, 95 F.3d 586, 591-92 (7th Cir. 1996). Similarly, a prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment is "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Id.* at 952 (quotation marks omitted). Ultimately, the court looks at the "totality of [the prisoner's] medical care when considering whether that care evidences deliberate indifference to serious medical needs." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016); *see also Snipes*, 95 F.3d at 591 (holding that a procedure "involves a number of minor

medical decisions . . . [that are] classic example[s] of matter[s] for medical judgment" and that the entire procedure must be viewed as a whole).

On the record before this court as to the totality of plaintiff's care, no reasonable jury could find that defendant was deliberately indifferent to plaintiff's pre-extraction or post-extraction care. Although plaintiff argues that defendant should have obtained a pre-extraction x-ray, he fails to explain how the lack of a pre-extraction x-ray affected his tooth extraction or caused him any injury, at least in a way that would have made it obvious to a lay jury. Similarly, the record shows that defendant took steps both before *and* during the extraction to ease plaintiff's pain. Absent some evidence that the procedure *required* general anesthesia -- a decision largely out of defendant's hands under WSPF policy -- a jury would have no basis to find that the local anesthesia applied by defendant before or during the procedure was evidence of negligence, much less deliberate indifference.

As for post-extraction care, the record shows that defendant further ordered Ensure, ice and pain medication, but he was not responsible for ensuring plaintiff's actual follow-up care, and he did not know if his orders were ignored. Finally, plaintiff's argument that defendant cancelled the Ensure order is simply contradicted by the record, showing that a different person cancelled that order.[7]

In fairness to plaintiff, this was undoubtedly a difficult tooth extraction that caused him to bleed and experience a significant amount of pain. However, the totality of plaintiff's medical treatment shows that defendant did not intentionally or recklessly cause

---

[7] Also, it appears that Wehrle did not cancel the order outright, but scheduled it to be discontinued later, which was arguably consistent with defendant's order that plaintiff receive Ensure for 30 days.

him pain during the extraction; nor did he consciously disregard plaintiff's medical needs. *McGowan*, 612 F. 3d at 641; *see Snipes*, 95 F.3d at 591.[8] First, defendant numbed plaintiff's mouth with local anesthetic and provided additional anesthetic because of complicating factors with his extraction. Second, defendant stopped the extraction when plaintiff cried out in pain and told plaintiff that he would try to be more careful after plaintiff complained about his being too rough. Third, when defendant's extraction attempts were unsuccessful, defendant asked for permission to pulverize the tooth. Fourth, plaintiff recovered well from the extraction. Indeed, at his first follow-up appointment eight days after the extraction, he reported no pain, and the examining doctor removed his stitches, noting only that plaintiff's mouth tissue was slightly swollen. At a second follow-up appointment a few weeks later, the examining doctor further reported that the extraction site was healing, his gums were healthy, and he had full sensation. Fifth, plaintiff suffered *no serious* long-term complications from the extraction, aside from some itching, occasional pain and a radiolucency, which another doctor said was likely scar tissue. Finally, there is no evidence that the extraction injured plaintiff's nerve. Based on the totality of these facts, this is simply not an "extreme situation" warranting judicial interference with defendant's management of plaintiff's pain during a medical procedure. *See Snipes*, 95 F.3d at 591-92.

Plaintiff might have preferred that defendant extract his tooth differently, but that alone does not give rise to a deliberate indifference claim, as there is no evidence that defendant's choice of treatment was inappropriate. To the contrary, the totality of the

---

[8] Plaintiff also asserts that defendant offered to remove scar tissue from the tip of his tongue during the extraction, but that offer does not show deliberate indifference, especially since defendant did not actually do so. *See Farmer*, 511 U.S. at 837.

11

evidence compels a finding that defendant effectively treated plaintiff's toothache, and, while he did experience a significant amount of pain during the operation, even excellent medical treatment can result in pain. *Cf. id.* at 592 ("Those recovering from even the best treatment can experience pain."). Also, while another doctor described the suture pattern used by defendant as "unorthodox," that alone does not even show negligence and certainly not deliberate indifference. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (concluding that disagreement between two medical professionals, without more, is insufficient to establish an Eighth Amendment violation). Here, plaintiff does not offer *any* contrary medical opinion or treatise.

Although it is concerning that defendant attempted to extract the tooth eight times, ignored plaintiff's request to stop the extraction, cut in unnumbed areas of his mouth, roughly treated his lips and mouth, and gave him more cuts after promising to be gentler, these facts do not show that defendant intentionally, knowingly, or recklessly caused him pain—particularly in light of defendant's efforts to reduce plaintiff's pain and the successful extraction. *See McGowan*, 612 F. 3d at 641. *At most*, these incidents might support a claim of negligence or perhaps gross negligence -- plaintiff himself describes some of the cuts as "accidental" -- but that is insufficient to establish deliberate indifference; also, even if, as plaintiff contends, *res ipsa loquitur* applied, that doctrine only provides a basis to find negligence. *Farmer*, 511 U.S. at 836; *see Ruark v. Union Pac. R.R. Co.*, 916 F.3d 619, 625 (7th Cir. 2019) (explaining that *res ipsa loquitur* is "a shortcut to a negligence claim." (quotation marks omitted)). Moreover, there is no evidence that defendant's eight cuts to plaintiff's mouth during a difficult extraction were so far afield from the acceptable dental

12

standards for extracting a tooth with complicating factors that defendant did not exercise his medical judgment in extracting the tooth. *Norfleet*, 439 F.3d at 396. Nor is there evidence that defendant was unqualified to perform the extraction. Finally, plaintiff's wholly speculative argument that defendant subjected him to a painful dental procedure as punishment for his long prison sentence cannot defeat summary judgment. *Coleman*, 925 F.3d at 345 (concluding that speculation or conjecture will not defeat a summary judgment motion). Rather, the record shows that plaintiff requested a tooth extraction for a serious dental problem, and defendant successfully performed the complicated, though painful procedure. Thus, defendant's motion for summary judgment is granted as to his Eighth Amendment claim of deliberate indifference.[9]

## II.  State-Law Negligence Claim and Motion for Reconsideration

The general rule is that federal courts should relinquish jurisdiction over state law claims if all federal claims are resolved before trial. 28 U.S.C. § 1367(c); *Burritt v. Diflefsen*, 807 F.3d 239, 252 (7th Cir. 2015). Here, because the court is dismissing plaintiff's federal claim against defendant, it will decline to exercise supplemental jurisdiction over plaintiff's state law claim against defendant. Subject to the applicable Wisconsin statute of limitations and tolling rules, therefore, plaintiff may pursue his negligence claim against defendant in state court, including his now moot motion for reconsideration of his request for recruitment of counsel and an expert to pursue that claim.

---

[9] Given this ruling, the court need not address defendant's alternative, qualified immunity argument as to plaintiff's Eighth Amendment claim.

ORDER

IT IS ORDERED that:

1) Defendant's motion for summary judgment (dkt. #94) is GRANTED and plaintiff's federal claim is dismissed with prejudice.

2) The court declines to exercise supplemental jurisdiction over plaintiff's state law claim which is DISMISSED without prejudice.

3) Plaintiff's motion for summary judgment (dkt. #86) is DENIED.

4) Plaintiff's construed motion for reconsideration of the order denying appointment of counsel and an expert is DENIED AS MOOT.

5) The clerk of court is directed to enter judgment in defendant's favor and close this case.

Entered this 4th day of October, 2023.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge